UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

JOHN MICHAEL BROOKS,

                    Petitioner,

        v.

JACK WARNER,

                    Respondent.

Case No. 3:22-cv-05486-JLR-TLF

REPORT AND
RECOMMENDATION

Noted for **February 6, 2026**

Petitioner, John Michael Brooks, a state prisoner who is currently confined at Monroe Correctional Complex – Twin Rivers Unit (MCC-TRU) in Monroe, Washington, seeks relief under 28 U.S.C. § 2254 from a 2017 Cowlitz County Superior Court judgment and sentence. Dkt. 46. Respondent has filed an answer to petitioner's amended habeas petition and submitted relevant portions of the state court record. Dkts. 46, 52, 53. Respondent also submitted a supplemental answer at the Court's direction. Dkt. 56. Petitioner did not file a response to respondent's answer or supplemental answer.

For the reasons set forth below, the undersigned recommends that the amended petition (Dkt. 46) should be DISMISSED with prejudice. Also, for the reasons set forth below, the undersigned recommends a certificate of appealability (COA) should be DENIED.

REPORT AND RECOMMENDATION - 1

# BACKGROUND

## I. Statement of Facts

The Washington Court of Appeals ("Court of Appeals") summarized the facts relevant to this matter on direct appeal[1]; the unpublished opinion is quoted below:

> In April 2016, six-year-old AB was living with her step-grandmother Sherri Brooks[2] in Washington State because her father, Brooks, had moved to Virginia for a new job. Sherri[3] contacted law enforcement and reported that AB had disclosed that Brooks had been having inappropriate sexual contact with her.
> The State charged Brooks with two counts of first degree rape of a child–domestic violence.
> …
> At trial, AB, Sherri, [AB's mother] Randi, [forensic interviewer] [John] Hancock, [forensic interviewer] [Samantha] Mitchell, and [AB's counselor] [Courtney] Each testified for the State. Brooks and his grandmother Beulah Brooks testified for the defense.
>
> A. State's Evidence
>
> AB testified that Brooks had engaged in numerous separate incidents of sexual contact with her, including oral sex and penile/vaginal contact.
> Sherri testified about AB's disclosures, which included statements that Brooks had engaged in cunnilingus and fellatio with AB, had rubbed his penis against her vagina and against her butt, and had engaged in intercourse with her. Sherri also testified that around the time of the disclosures, AB had complained of a sore bottom and crotch. When bathing AB, Sherri observed that AB's "crotch was red and raw." 6 RP (Nov. 1, 2017) at 149. Additionally, Sherri stated that AB revealed that Brooks made her promise to keep their activities secret and that she (Sherri) had once overheard Brooks ask AB if their secret was still "safe." 6 RP (Nov. 1, 2017) at 153.
> Randi testified that AB's normally "happy, joyful" demeanor changed after living with her father. 8 RP (Nov. 2, 2017) at 73. Randi removed AB from Washington after learning of the sexual abuse allegations. AB subsequently disclosed to Randi that Brooks had "had sex" with her. 8 RP (Nov. 2, 2017) at 77. When Randi asked AB what she meant by "sex," AB had described vaginal intercourse. 8 RP (Nov. 2, 2017) at 77. AB also revealed that Brooks had "taught her how to play with [her vagina] and use toys and stuff." 8 RP (Nov. 2, 2017) at

---

[1] *State v. Brooks*, No. 51298-0-II, 9 Wn. App.2d 1056, 2019 WL 2950058, *review denied*, 194 Wn.2d 1013 (2019).

[2] The Court notes that Ms. Brooks's first name is spelled as both "Sherri" and "Sherry" at different points in the record. Because the state court transcript and the Court of Appeals decision on direct appeal uses the spelling of "Sherri", the Court also adopts that spelling in its discussion section.

[3] [FN 4 by Court of Appeals] Because Sherri Brooks, AB's mother Randi Brooks, and Brooks share the same last name, we refer to Sherri and Randi by their first names to avoid confusion. No disrespect is intended.

REPORT AND RECOMMENDATION - 2

79. Randi stated that since AB returned from living with Brooks, AB had been "acting out sexually." 8 RP (Nov. 2, 2017) at 82.

The State played Hancock's forensic interview with AB for the jury. During the interview, AB acknowledged that she and her father shared a secret, but she refused to reveal what the secret was and said that "something will happen" if she revealed the secret. 7 RP (Nov. 1, 2017) at 211. When it became clear that AB would not answer any more questions, Hancock terminated the interview.

The State also played Mitchell's forensic interview with AB for the jury. In this interview, AB disclosed to Mitchell that she (AB) had had "[s]ex" with her father and described performing fellatio on more than one occasion. 8 RP (Nov. 2, 2017) at 26. AB also admitted that she had once been caught watching pornography on a computer. 8 RP (Nov. 2, 2017) at 48.

Each testified that AB had consistently disclosed that Brooks had engaged in sexual contact with her numerous times and that this contact included oral sex and vaginal intercourse. AB also expressed fear that if her father was not found guilty, he might hurt her or hurt or kill her sister. Additionally, Each testified that sexual abuse victims can start engaging in "sexually-reactive behaviors, which would be anything from fondling/masturbation of themselves to using toys to even touching of other peers or adults within the home." 8 RP (Nov. 2, 2017) at 158.

Each also testified that part of her role as a therapist was to help child victims of sex abuse prepare for trial by allowing them to "process[ ] how they feel about [going to court] and overcoming any fears or worries so that they could feel more comfortable with the idea of coming to court." 8 RP (Nov. 2, 2017) at 107. Each stated that this process did not include coaching the child about what to say in court. Instead, the process often included teaching the child about the role each person plays in court and helping the child find a way to tell his or her story.

Each also testified that AB made some of her disclosures while they were working on making AB more comfortable with going to court. But Each asserted that when AB would start talking about the abuse, she (Each) would clarify that she was now being the therapist rather than role playing with AB about the trial process.

B. Defense Evidence

Brooks' grandmother testified that in April 2015, she had discovered AB looking at pornography on her father's computer.

Brooks testified that the family had previously lived in Texas but that he had brought his daughters to Washington against Randi's wishes because he was afraid she would try to get custody of them in Texas. Brooks denied having any sexual contact with AB. He was aware that his grandmother had discovered AB watching pornography, and he knew that AB had once inadvertently opened a pornographic website on his computer while trying to look at video on another cites. But he denied ever intentionally exposing AB to pornography.

Brooks also testified about his younger daughter, CB. He stated that CB had speech development issues, that she had difficulty communicating, and that her ability to speak had improved while she was at preschool and she would possibly be able to start kindergarten on time.

C. Closing Argument

REPORT AND RECOMMENDATION - 3

In closing argument, defense counsel argued that Each's therapy or Randi caused AB to become concerned that Brooks might kill CB. The State rebutted this statement with the following argument:

> And let's think about then why it is that over a period of time after [AB] finally processed her feelings about this man who repeatedly raped her over a year, why it is that she's scared for her little sister? This is a little girl who finally found her voice when she spoke with her grandmother after a couple of weeks of living there with her. This is a little girl who is finally processing and becoming able to talk to you people about it, about her feelings and about what happened to her. This is a little girl who has known her sister all her life, she has known that her sister has absolutely no voice, is incapable of talking.
>
> So you ask why it is that she might be scared that the Defendant could do this to her little sister? Her sister can't talk to you about what happened to her, that is why. She doesn't want it to happen to her little sister because no one can defend her little sister. She is defending herself. She told you people what happened. She was terrified of doing so, and she still was able to tell you that she sucked his penis; that his penis went inside her vagina like this.

10 RP (Nov. 3, 2017) at 73-74.

After the argument, defense counsel objected to the portion of the State's rebuttal argument referring to the fact CB "could not tell what happened to her." 10 RP (Nov. 3, 2017) at 79. Defense counsel argued that this statement was inflammatory and that it suggested that "something actually happened to [CB] and that she can't talk about it." 10 RP (Nov. 3, 2017) at 79. Commenting that he was "not really sure what kind of curative instruction could cure that," defense counsel asked for a mistrial. 10 RP (Nov. 3, 2017) at 79.

The State responded that the argument was based on the evidence and was rebuttal to defense counsel's claim argument that AB is now claiming she's afraid Brooks is going to kill her sister. The trial court denied the motion for mistrial.

### D. Jury Instructions

The trial court gave the jury a *Petrich*[4] unanimity instruction stating,

> The State alleges that the defendant committed acts of Rape of a Child in the First Degree on multiple occasions. To convict the defendant of Rape of a Child in the First Degree, as charged in count I, one particular act of Rape of a Child in the First Degree must be proved beyond a reasonable doubt, and you must unanimously agree as to which act has been proved. To convict the defendant of Rape of a Child in the First Degree, as charged in count II, one particular act of Rape of a Child in the First Degree

---

[4] [FN 5 by Court of Appeals] *State v. Petrich*, 101 Wn.2d 566, 572, 683 P.2d 173 (1984), *overruled on other grounds by State v. Kitchen*, 110 Wn.2d 403, 405-06, 756 P.2d 105 (1988).

REPORT AND RECOMMENDATION - 4

> must be proved beyond a reasonable doubt, and you must
> unanimously agree as to which act has been proved. You need
> not unanimously agree that the defendant committed all the acts
> of Rape of a Child in the First Degree.

Clerk's Papers (CP) at 103 (Jury Instruction 11). The trial court also provided the jury with to convict instructions for each count.

During its deliberations, the jury submitted the following question to the trial court: "Instruction 9 mentions Count I, Instruction 10 mentions Count II—with exception of Count I, Count II they read exactly the same. Instruction 11 reads the same for Count I and Count II. What is the difference between Count I and Count II." CP at 87.

After consulting with the parties, the trial court retracted the original to convict instruction for Count II and provided the jury with a new to convict instruction for Count II, revised Jury Instruction 10, that provided in part:

> To convict the defendant of the crime of rape of a child in
> the first degree in Count II, each of the following elements of the
> crime must be proved beyond a reasonable doubt:
> (1) That on, about, or between May 20, 2015 and March
> 31, 2016, *on an occasion separate and distinct from Count I*, the
> defendant had sexual intercourse with [AB].

CP at 102 (emphasis added). The new instruction added the phrase, "on an occasion separate and distinct from Count I," to the original instruction. CP at 102.

The jury found Brooks guilty of two counts of first degree rape of a child.

Dkt. 53-1 at 122-129 (Ex. 6).

II. <u>State Court Procedural History</u>

    A.    <u>Direct Appeal</u>

Petitioner was convicted after a jury trial of two counts of first-degree rape of a child-domestic violence in Cowlitz County Superior Court. Dkt. 53-1 at 129 (Ex. 6). On December 19, 2017, the trial court imposed sentences of life in prison on each count with a mandatory minimum sentence of 318 months on each count, which was at the top of the standard range. *Id.* at 2-19 (Ex. 6).

On direct appeal, petitioner raised the following claims: (1) the trial court erred when it allowed a witness to testify via electronic means (Skype) at a *Ryan* hearing without meeting the requirements of Revised Code of Washington ("RCW") 9A.44.150 or any court rule; (2) the trial court erred when it gave a *Petrich* instruction that allegedly

REPORT AND RECOMMENDATION - 5

allowed the jury to convict the defendant of two counts of the same crime without unanimity on two separate events; and (3) trial counsel provided ineffective assistance by failing to object to the State's rebuttal argument that allegedly implied petitioner had also sexually molested his younger daughter. Dkt. 53-1 at 22-53 (Ex. 2).

In his Statement of Additional Grounds for Review ("SAG"), petitioner raised the following additional claims: (1) ineffective assistance of trial counsel in failing to call a medical expert or "memory expert", refusing to call material witnesses, purposefully neglecting his duties to give petitioner grounds for appeal; (2) denial of his right to counsel during a critical stage of trial when his first defense counsel withdrew; (3) that he was forced to waive his speedy trial rights; (4) prosecutorial misconduct for partiality in pressing charges; (5) prosecutorial misconduct for using "false pretense" to obtain a waiver of speedy trial; and (6) prosecutorial misconduct during closing argument. Dkt. 53-1 at 64-83 (Ex. 3).

The Court of Appeals rejected all of petitioner's claims and affirmed his convictions. *Id.* at 121-138 (Ex. 6).

Petitioner filed a motion for reconsideration and to supplement the record arguing that prior appointed appellate counsel had failed to obtain additional hearing transcripts including from January 19, March 30, and May 1, 2017, despite his request that they do so. *Id.* at 140-144 (Ex. 7). Petitioner argued the Court should reconsider its opinion of the issues raised in petitioner's SAG after considering the additional transcripts. *Id.* The Court of Appeals denied the motion for reconsideration and to supplement the record on August 2, 2019. *Id.* at 119 (Ex. 5).

Petitioner sought review in the Washington Supreme Court arguing that the Court of Appeals erred in denying his motion to supplement the record with additional transcripts necessary to review his SAG claims. *Id.* at 166-174 (Ex. 8). On December 4, 2019, the Washington Supreme Court denied the petition for review without comment. *Id.* at 204 (Ex. 9). The mandate issued on December 10, 2019. *Id.* at 206 (Ex. 10).

B.  Personal Restraint Petition (PRP)

Petitioner filed a PRP in Division II of the Washington Court of Appeals on September 14, 2020. Dkt. 53-2 at 3-414 (Ex. 11). Petitioner argued:

(1) ineffective assistance of trial counsel based on: (a) failure to consult or call to testify expert witnesses, specifically a medical examiner and early childhood psychologist; (b) failure to properly address inconsistent statements during pretrial hearings and trial (statements of Sherri Brooks and Randi Brooks); (c) failure to interview or call to testify key witnesses John A. Brooks, Pastor Marvin Kasemeir, Ashley Basse (niece of Sherri Brooks) and Gary Basse (brother of Sherri Brooks); (d) failure to introduce key evidence during trial and at the *Ryan* hearing, specifically letters from Sherri Brooks, Facebook messages between Randi Brooks and Angel Alverez, police report from Fort Hood M.A., Longview P.D. and C.P.S. notes, and AB's medical exam; (e) failure to properly investigate or discuss during pretrial hearings and trial custody biases of Randi Brooks and John and Sherri Brooks, (f) failure to provide a meaningful and vigorous defense related to the testimony of Beulah Brooks, failure to call Jordan Brooks to testify, failure to notify petitioner prior to trial of the ability to have a bench trial, and failure to properly cross-examine Sherri Brooks;

(2) the State committed misconduct by failing to disclose potentially exculpatory evidence in violation of *Brady v. Maryland*; and,

REPORT AND RECOMMENDATION - 7

(3) the trial court committed misconduct by: (a) denying petitioner counsel during a critical juncture of trial when his prior attorney withdrew; compelling petitioner to sign a speedy trial waiver against his wishes and delaying petitioner's trial by seven months giving key people in AB's life the opportunity to coach and "brain wash" her; and (b) engaging in *ex parte* communication with the jury. Dkt. 53-2 at 11-43 (Ex. 11).

On February 17, 2021, the Court of Appeals rejected petitioner's ineffective assistance claims, his *Brady* claims, and his judicial misconduct claims, and denied the PRP. Dkt. 53-3 at 65-68 (Ex. 15).

Petitioner moved for reconsideration, which the Court of Appeals granted in part on May 18, 2021. *Id.* at 70-74, 76 (Exs. 16, 17). The Court withdrew its opinion and issued a revised opinion denying the PRP, but added analysis regarding jury questions during deliberations. *Id.* at 76, 78-81. The Court of Appeals' revised opinion stated, in relevant part:

> First, regarding Brooks's ineffective assistance of counsel arguments, he claims that his counsel's failure to consult with or call as witnesses (1) a medical examiner regarding the lack of physical signs of sexual abuse and (2) an early childhood psychologist regarding child interview techniques and the ability to implant false memories, constitutes ineffective assistance. But even assuming, without deciding, that his counsel's performance was deficient, he fails to show that such consultation or production of such testimony would probably have changed the result of his trial.
>
> He next argues that his counsel's failure to "properly address" prior inconsistent statements of Sherry Brooks and Randi Brooks constitutes ineffective assistance. Pet. at 6. But he fails to show that his counsel's cross-examination of those witnesses fell below an objective standard of reasonableness.
>
> He also argues that he received ineffective assistance when his counsel did not interview or call as witnesses (1) his father, (2) a pastor regarding Sherry Brooks's bias, and (3) Sherry Brooks's niece and brother regarding her character and veracity. His counsel did interview Brooks's father, and after that interview, made a legitimate tactical decision not to call him as a witness. As to the other witnesses, Brooks does not show that interviewing them would have led to any admissible testimony. *State v. Neidigh*, 78 Wn. App. 71, 76-77, 895 P.2d 423 (1995). Thus, he does not show deficient performance.

REPORT AND RECOMMENDATION - 8

Brooks also argues that his counsel provided ineffective assistance when he did not introduce as evidence in the child hearsay hearing and at trial (1) letters from Sherry Brooks demonstrating her bias and lack of veracity, (2) Facebook messages between Randi Brooks and Angel Alvarez demonstrating her bias and lack of veracity, (3) a police report purportedly showing Randi Brooks's perjury, and (4) the report of the victim's medical examination regarding lack of signs of sexual abuse. But as to the first three, he does not show how that evidence would have been admissible. And as to the latter, he does not show that the introduction of that report would probably have changed the result of his trial. So, again, he does not show ineffective assistance of counsel.

Brooks argues that he received ineffective assistance because his counsel failed to properly address the efforts of Randi Brooks and Sherry Brooks to obtain custody of the victim. But he does not show that his counsel's investigation fell below an objective standard of reasonableness. Brooks also argues that his counsel provided ineffective assistance by not providing a "meaningful and vigorous defense" by his not calling Brooks's grandmother, father, and Jordan Brooks as witnesses; by his failure to notify Brooks of the option of a bench trial; and by his failure to properly cross-examine Sherry Brooks. Pet. at 7. But he does not show that his counsel's performance fell below an objective standard of reasonableness, and he does not establish that neither of his counsel advised him of the option of a bench trial.

Second, Brooks argues that the State committed misconduct by failing to disclose potentially exculpatory evidence in violation of *Brady v. Maryland*, 373 U.S. 83, 87, 83 S. Ct 1194, 10 L. Ed. 2d 215 (1963). But he does not show that his father's statements to the prosecutor, opining that Brooks is honest and Sherry Brooks is not, and stating that there were two other witnesses as to Sherry Brooks's lack of veracity (although his father refused to identify them), is exculpatory or impeaching. Thus, he does not demonstrate any *Brady* violation.

Third, Brooks argues that the trial court committed misconduct by (1) denying him counsel during a speedy trial hearing following his first attorney's withdrawal and (2) answering a jury question without him being present in court. Regarding the speedy trial hearing, Brooks does not show that the court committed misconduct by conducting a speedy trial hearing after his first counsel had withdrawn and before his second counsel had been appointed.

There were two times the jury asked questions. In response to the jury's first question, the trial court merely told the jury to refer to the jury instructions. When a court's answer to a jury question is negative in nature and conveys no affirmative information, a violation of the right to be present is harmless beyond a reasonable doubt. *State v. Besabe*, 166 Wn. App. 872, 882-83, 271 P.3d 387 (2012); *State v. Allen*, 50 Wn. App. 412, 419, 749 P.2d 702 (1988). Thus, Brooks does not demonstrate the trial court committed misconduct. Regarding the second question, Brooks was present in court by the time the court answered the jury question, and the discussion between counsel and the court that preceded that answer was not a critical stage of the proceeding that required his presence.[5] *In re Pers. Restraint of Lord*, 123 Wn.2d 296, 306, 868 P.2d 835 (1994). Brooks does not demonstrate any misconduct by the court.

---

[5] [FN 2 by Court of Appeals] Brooks also appears to argue that he received ineffective assistance of appellate counsel in failing to raise the jury question issue in his direct appeal. But because the argument is without merit, the failure to raise it on direct appeal does not constitute

REPORT AND RECOMMENDATION - 9

Brooks does not show any grounds for relief from personal restraint. We therefore deny his petition and his request for appointment of counsel.

*Id.* at 78-81 (Ex. 18).

On August 5, 2021, petitioner sought discretionary review in the Washington Supreme Court. *Id.* at 83-104 (Ex. 19). In his motion, petitioner raised three issues: (1) his right to be present was violated when the trial judge had *ex parte* communication with the jury through his bailiff without notifying the state or defense; (2) he was denied his right to representation when his public defender withdrew shortly before scheduled hearings giving key people in AB's life further time to coach, manipulate and train her on what to say; and (3) his trial counsel was ineffective for (a) failing to interview key witnesses, specifically John A. Brooks and Marvin Kasiemier, (b) failing to consult a medical examiner and early childhood psychologist on memory and rape/molestation, (c) failing to vigorously cross-examine and address inconsistent statements made by Sherri Brooks and Randi Brooks; (d) failing to introduce key evidence during the *Ryan* Hearing and jury trial of letters Sherri sent to the state, Facebook messages between Randi Brooks and Angel Alverez about doing anything including using his past against him to get custody of Randi and his kids, police/CPS reports showing inconsistent and flat out lies by Randi Brooks, AB's medical exam showing no signs of any trauma anywhere; (e) failing to address custody bias of Randi Brooks and John A. and Sherri Brooks; (f) failing to provide a meaningful adversary against the state by not thoroughly questioning Beulah Brooks during trial, and failing to notify petitioner of all viable trial strategies, including a bench trial. *Id.* at 85-86 (Ex. 19).

---

ineffective assistance of appellate counsel. *In re Pers. Restraint of Dalluge*, 152 Wn.2d 772, 787, 100 P.3d 279 (2004).

REPORT AND RECOMMENDATION - 10

On October 26, 2021, the Washington Supreme Court denied petitioner's motion for discretionary review, and stated:

> To obtain this court's review, Mr. Brooks must show that the Court of Appeals decision conflicts with a decision of this court or with a published decision of the Court of Appeals, or that he is raising a significant constitutional question or an issue of substantial public interest. RAP 13.4(b); RAP 13.5A(a)(1), (b). Mr. Brooks continues to press his claims of ineffective assistance of counsel and also contends that he was deprived of his right to counsel at a speedy trial hearing after his appointed counsel withdrew and was denied his right to be present when the trial court answered jury inquiries during deliberations. But he does not cite any of the criteria for review, nor does he address at all the Court of Appeals decision showing that it conflicts with any other decision or explain why his issues are of such constitutional significance or public interest as to call for this court's review.

*Id.* at 170-171 (Ex. 20). Petitioner subsequently filed a motion to modify the Deputy Commissioner's ruling, which the Washington Supreme Court denied on May 4, 2022, without comment. *Id.* at 172-179, 182 (Exs. 21, 22). The Court of Appeals issued a certificate of finality on May 5, 2022; its decision became final on May 4, 2022. *Id.* at 184 (Ex. 23).

C.    Motion for New Trial

On May 22, 2023, petitioner filed a motion for a new trial under Washington State Superior Court Criminal Rule ("CrR") 7.8(b) in Cowlitz County Superior Court. Dkt. 46 at 29-31.

On June 2, 2023, the Superior Court denied petitioner's motion. *Id.* The Superior Court stated:

> [Petitioner] filed a PRP on September 14, 2020. He claimed multiple issues including ineffective assistance of counsel for not calling his father, Brooks Sr., as a witness. In support of that PRP, the defendant included the same letter from his father he includes in his present motion. In that letter, Brooks Sr. stated, "I told John's lawyer that before Sherry testified in court, she had threatened that I would never see [AB and CB] again if John was not convicted." Brooks Sr. reiterates this claim in his affidavit, stating "I did inform defense counsel during

REPORT AND RECOMMENDATION - 11

trial that my wife Sherry Brooks told me I would never see my granddaughters again if my son, John Michael Brooks, was found not guilty."

*Id.*

The Cowlitz County Superior Court found that petitioner was procedurally barred from raising the issue regarding petitioner's father's failure to testify because he had litigated the same claim in his prior personal restraint petition, which the Court of Appeals had denied. *Id.* at 30-31. The Superior Court also decided that the proffered testimony was not newly discovered evidence, as it was known to defense counsel during trial; defense counsel's decision not to call Brooks Sr. as a witness was a legitimate trial decision; and, the proffered testimony would probably not change the result of the trial and would only serve to impeach another witness who testified. *Id.* at 30.

On April 4, 2024, Brooks filed a notice of appeal of the Superior Court's denial of his CrR 7.8 motion, along with a motion to enlarge time to appeal, claiming his lawyer never advised him of the June 2, 2023, order. *Id.* at 35. On May 6, 2024, Commissioner Bearse of the Court of Appeals dismissed petitioner's appeal as untimely, finding that no gross miscarriage of justice would result from denying the motion because petitioner had already pursued the same issues through direct appeal and a personal restraint petition. *Id.* at 35-36. The Court of Appeals issued a mandate on June 7, 2024, certifying that the ruling became final on June 6, 2024. *Id.* at 37.

**DISCUSSION**

I. Relevant Legal Standard for Merits Review

A habeas corpus petition filed under 28 U.S.C. § 2254:

[S]hall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the

REPORT AND RECOMMENDATION - 12

claim--

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). A state court decision is "contrary to" the Supreme Court's "clearly established precedent if the state court applies a rule that contradicts the governing law set forth" in the Supreme Court's cases. *Lockyer v. Andrade*, 538 U.S. 63, 73 (2003) (quoting *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000)). It also is contrary to the Supreme Court's clearly established precedent "if the state court confronts a set of facts that are materially indistinguishable from a decision" of the Supreme Court, "and nevertheless arrives at a result different from" that precedent. *Id.* Clearly established federal law is defined, for purposes of AEDPA, as holdings (not dicta) of the United States Supreme Court, in existence as of the time of the relevant state court decision. *Lockyer v. Andrade*, 538 U.S. 63, 71 (2003). Opinions of United States Courts of Appeals are not within this definition, it is solely Supreme Court opinions that are within the definition of clearly established federal law under AEDPA. *Marshall v. Rodgers*, 569 U.S. 58, 64 (2013).

A state court decision involves an "unreasonable application" of the Supreme Court's clearly established precedent if: (1) the state court "identifies the correct governing legal rule" from the Supreme Court's cases, "but unreasonably applies it to the facts" of the petitioner's case; or (2) the state court "unreasonably extends a legal principle" from the Supreme Court's precedent "to a new context where it should not

REPORT AND RECOMMENDATION - 13

apply or unreasonably refuses to extend that principle to a new context where it should apply." *Williams v. Taylor*, 529 U.S. 362, 407 (2000). The state court decision, however, must be "more than incorrect or erroneous." *Lockyer*, 538 U.S. at 75. That is, "[t]he state court's application of clearly established law must be objectively unreasonable." *Id.*; *see also Schriro v. Landrigan*, 550 U.S. 465, 473 (2007).

This is a "'highly deferential standard," which "demands that state-court decisions be given the benefit of the doubt.'" *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011) (quoting *Woodford v. Visciotti*, 537 U.S. 19, 24 (2002)). "A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision.'" *Harrington v. Richter*, 562 U.S. 86, 101 (2011) (quoting *Yarborough v. Alvarado*, 541 U.S. 662, 664 (2004)). "[H]abeas corpus is a 'guard against extreme malfunctions in the state criminal justice systems,' not a substitute for ordinary error correction through appeal." *Id.* at 102 (quoting *Jackson v. Virginia*, 443 U.S. 307, 332, n.5 (1979) (Stevens, J., concurring in judgment)). "As a condition for obtaining habeas corpus from a federal court," therefore, " a state prisoner must show that the state court's ruling on the claim being presented was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fair[-]minded disagreement." *Id.* at 103.

A *habeas* petition also may be granted "if a material factual finding of the state court reflects 'an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.'" *Juan H. v. Allen*, 408 F.3d 1262, 1270 n.8 (9th Cir. 2005) (9th Cir. 2005) (quoting 28 U.S.C. § 2254(d)(2)). A state court's factual

REPORT AND RECOMMENDATION - 14

determination is "presumed to be correct," though, and the petitioner has "the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1). As such, a district court "may not simply disagree with the state court's factual determinations," but rather it must "conclude" that those determinations did not have even "fair support" in the state court record. *Thatsaphone v. Weber*, 137 F.3d 1041, 1046 (8th Cir. 1998).

"[W]hether a state court's decision was unreasonable" also "must be assessed in light of the record the court had before it." *Holland v. Jackson*, 542 U.S. 649, 652 (2004);  *Miller-El v. Cockrell*, 537 U.S. 322, 348 (2003). The district court's review "focuses on what a state court knew and did," and the state court's decision is "measured against [the Supreme] Court's precedents as of 'the time the state court renders its decision.'" *Cullen*, 563 U.S. at 182 (quoting *Lockyer v. Andrade*, 538 U.S. 63, 71-72 (2003)); *see also Greene v. Fisher*, 132 S.Ct. 38, 44 (2011).  In addition, generally "federal habeas corpus relief does not lie for errors of state law." *Estelle v. McGuire*, 502 U.S. 62, 67 (1991) ("[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions.") (quoting *Lewis v. Jeffers*, 487 U.S. 764, 780 (1990)). The error, furthermore, generally must have "had substantial and injurious effect or influence in determining the jury's verdict." *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993) (quoting *Katteakos v. United States*, 328 U.S. 750, 776 (1946)) (*habeas* petitioners "are not entitled to habeas relief based on trial error unless they can establish that it resulted in 'actual prejudice.'") (quoting *United States v. Lane*, 474 U.S. 438, 449 (1986)).

II.  Ground 3: Ineffective Assistance of Counsel – Merits Review

The parties agree that petitioner has exhausted state remedies with respect to Ground 3. In Ground 3, petitioner contends trial counsel rendered ineffective assistance in several ways. Petitioner fails to show the Court of Appeals' rejection of this claim was contrary to or an unreasonable application of clearly established federal law or an unreasonable determination of the facts. Accordingly, this claim should be denied.

In *Strickland v. Washington*, 466 U.S. 668 (1984), the Supreme Court created a two-part test for determining whether a defendant received ineffective assistance of counsel in violation of the Sixth Amendment to the United States Constitution. First, a defendant must demonstrate their attorney's performance was deficient, which requires showing "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id.* at 687. Second, a defendant must demonstrate the deficient performance prejudiced the defense to such an extent that the results of the trial cannot be trusted. *Id.*

Under the first prong, the reasonableness of an attorney's performance is to be evaluated from counsel's perspective at the time of the alleged error and in light of all the circumstances. *Id.* at 690. The petitioner must carry a heavy burden, as reviewing courts "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." *Id.* at 689 (citation omitted).

Under the second prong, a petitioner must establish prejudice, meaning that there is a reasonable probability the results would have been different but for counsel's deficient performance. *Kimmelman v. Morrison*, 477 U.S. 365, 375 (1986); *Strickland,*

REPORT AND RECOMMENDATION - 16

466 U.S. at 696. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694. "[A] court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies. . . . If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, . . . that course should be followed." *Id.* at 697.

- Failing to Conduct Adequate Investigation/Interview of John A. Brooks

Petitioner argues trial counsel provided ineffective assistance by failing to conduct a meaningful investigation by failing to interview witness John A. Brooks ("Brooks Sr.") until the last day of trial, for approximately 5 minutes during a lunch recess. Dkt. 46 at 8, 25.

In rejecting this claim, the Court of Appeals, in denying petitioner's PRP stated:

> [Petitioner] also argues that he received ineffective assistance when his counsel did not interview or call as witnesses (1) his father, (2) a pastor regarding Sherry Brooks's bias, and (3) Sherry Brooks's niece and brother regarding her character and veracity. His counsel did interview Brooks's father, and after that interview, made a legitimate tactical decision not to call him as a witness. As to the other witnesses, Brooks does not show that interviewing them would have led to any admissible testimony. *State v. Neidigh*, 78 Wn. App. 71, 76-77, 895 P.2d 423 (1995). Thus, he does not show deficient performance.

Dkt. 53-3 at 78-81 (Ex. 18).

Here, the letter petitioner submitted from his father (Brooks Sr.) in support of his PRP states that when asked by petitioner's defense attorney he confirmed that AB had stated that petitioner put his finger in her anus. Dkt. 53-2 at 49-53 (Ex. 11). Specifically, he states the defense attorney "asked me if I was sure the incident where [AB] said her dad hurt her butt with his finger happened. I told him it definitely happened." *Id.* Brooks Sr.'s letter further states "I talked about the incident where [AB] had complained that

REPORT AND RECOMMENDATION - 17

John has stuck his finger in her butt, I told him [the defense attorney] that that incident definitely happened." *Id.* Brooks Sr. states that the defense attorney "got a horrified look on his face asked to see my notes and left the room for about three minutes" and then came back and told Brooks Sr. he had to leave and that he could not speak to him any longer. *Id.* Brooks Sr. states that "I did not mean that I knew John had molested [AB] but that she had reported it to both me and Sherry [sic] when the incident happened and I was suspicious something had happened." *Id.*

In his PRP[6], petitioner points to the statements in Brooks Sr.'s letter indicating that he and Sherri Brooks encouraged AB to talk about what had happened to her and praised her and "reward[ed]" her when she did talk and also indicating he had some concern that AB may have "felt like she had to say something." *Id.* at 16-21. Petitioner, in his PRP, argued that this was inconsistent with Sherri Brooks' testimony that she did not encourage AB to talk. *Id.* Petitioner also points to the fact that Sherri Brooks testified that she was seeing AB once per week and overnight every other weekend during the period at issue but Brooks Sr.'s letter indicates that he, and potentially Sherri, saw AB more frequently. *Id.* Petitioner also points to Brooks Sr.'s statement that during the timeframe in question petitioner's half-brother Robert and his girlfriend were also staying at the apartment for 2-3 weeks. *Id.*

The Court of Appeals reasonably rejected petitioner's claim that his counsel provided ineffective assistance in failing to properly interview or call Brooks Sr. to testify.

---

[6] The Court notes that petitioner does not lay out the specific arguments that he raised to the state court in his PRP in support of his claims raised in Ground 3 of his federal habeas petition. However, the Court construes the petition liberally and understands the petition as intending to raise the same arguments raised in the PRP in support of the claims in this federal habeas petition. Accordingly, the Court addresses those arguments in discussing those claims here.

REPORT AND RECOMMENDATION - 18

There is nothing in the record to indicate that defense counsel misunderstood Brooks Sr.'s statement that AB had stated that petitioner put his finger in her anus. Brooks Sr.'s letter states that he confirmed the statement was made, not that it happened. And the fact that Brooks Sr. confirmed that AB had reported to him that petitioner had put his finger in her anus reflects that his testimony at trial on that issue would have been damaging to petitioner.

Furthermore, petitioner fails to show that Brooks Sr.'s statements regarding he and Sherri Brooks encouraging AB to talk, that he recalled seeing AB more frequently than Sherri Brooks testified at trial, or that petitioner's half-brother and his girlfriend stayed with petitioner for two to three weeks, created a reasonable probability of a different outcome. The record shows that the prosecution presented substantial evidence supporting the finding of guilt including AB's testimony that petitioner had engaged in numerous separate incidents of sexual contact with her (Dkt. 53-4 at 420-429), Sherri Brooks's and AB's counselor's (Each's) testimony that AB had disclosed that petitioner had engaged in sexual contact with AB, (*id.* at 438-441, 445-448, 450, 659-699) and evidence from a forensic interview with AB where she disclosed that she had had "sex" with petitioner (Dkt. 53-4 at 555, 566-568, 574-589).

Petitioner fails to show the Court of Appeals' rejection of this claim was contrary to or an unreasonable application of clearly established federal law or an unreasonable determination of the facts. Accordingly, this claim should be denied.

- Failing to Consult Medical Examiner or Early Childhood Psychologist

Petitioner argues trial counsel provided ineffective assistance by failing to consult or inquire into a medical examiner, regarding the alleged victim's medical report, or an

early childhood psychologist/memory expert on how accurate young children's memories are and the ability to believe false information. Dkt. 46 at 8.

In rejecting this claim, the Court of Appeals, in denying petitioner's PRP stated:

> First, regarding Brooks's ineffective assistance of counsel arguments, he claims that his counsel's failure to consult with or call as witnesses (1) a medical examiner regarding the lack of physical signs of sexual abuse and (2) an early childhood psychologist regarding child interview techniques and the ability to implant false memories, constitutes ineffective assistance. But even assuming, without deciding, that his counsel's performance was deficient, he fails to show that such consultation or production of such testimony would probably have changed the result of his trial.

Dkt. 53-3 at 78-81 (Ex. 18).

In his PRP, petitioner argued that the medical examination of AB dated May 25, 2016 "showed no signs of abuse" and that trial counsel should have hired an expert to examine AB or, at least the state's report. Dkt. 52-3 at 11-15 (Ex. 11). Petitioner contends the expert could have then testified as to their interpretation of the report and explained the common signs of sex abuse in children. *Id.* Petitioner attached a copy of the medical report to his PRP. *Id.* at 70-75. The report did not reflect any significant physical findings but specifically states that "a normal or nonspecific genital or anal exam cannot prove that past sexual abuse did or did not occur." *Id.* at 74. Petitioner also argues that an early childhood psychologist expert witness could have combatted the state's argument that petitioner was isolating AB in order to sexually abuse her. *Id.* at 11-15. Petitioner also argues that such an expert could have addressed how Sherri Brooks's and Brooks Sr.'s alleged encouragement of AB to talk could have implanted false memories and that the forensic interviewers and counselor could have intentionally or unintentionally given AB the knowledge she needed to make the allegations against him. *Id.*

REPORT AND RECOMMENDATION - 20

The state court reasonably rejected petitioner's claim. Petitioner's asserted evidence is pure speculation that any such experts would have testified on his behalf and in terms of what they might have testified to. This is insufficient to establish prejudice. *See Wildman v. Johnson*, 261 F.3d 832, 839 (9th Cir. 2001) (petitioner failed to show counsel provided ineffective assistance in failing to retain expert where petitioner offered no evidence that an expert would have testified); *Grisby v. Blodgett*, 130 F.3d 365, 373 (9th Cir. 1997) (finding that mere "[s]peculation about what an expert could have said is not enough to establish prejudice" for purposes of ineffective assistance of counsel claim).

Petitioner also fails to show it was unreasonable or deficient performance for defense counsel to make the tactical choice to emphasize the lack of medical evidence rather than calling an expert witness to provide testimony regarding a medical report which specifically states that "a normal or nonspecific genital or anal exam cannot prove that past sexual abuse did or did not occur." Dkt. 53-2 at 74 (Ex. 11). In closing arguments, defense counsel focused on the absence of medical evidence stating "[a]nd we know they have access to a physician. We know she saw a physician. There's no physical evidence to corroborate this, and that's a problem." Dkt. 53-5 at 129 (Ex. 33). Defense counsel also argued to the jury that "if there had been any problem at all with [AB]'s physical examination on May 25th, the doctor would have been here to testify." *Id.* at 124 (Ex. 33). Petitioner fails to show the decision to emphasize the absence of physical evidence was not a reasonable tactical decision by defense counsel or that petitioner was prejudice by the decision.

REPORT AND RECOMMENDATION - 21

Petitioner fails to show the Court of Appeals' rejection of this claim was contrary to or an unreasonable application of clearly established federal law or an unreasonable determination of the facts. Accordingly, this claim should be denied.

- Failing to Adequately Interview, Investigate or Cross-Examine Sherri Brooks and Randi Brooks

Petitioner argues trial counsel provided ineffective assistance by failing to vigorously interview, investigate, or cross-examine witnesses at trial, specifically, Sherri Brooks, and Randi Brooks. Dkt. 46 at 8, 25.

The Court of Appeals, in denying petitioner's PRP stated:

> He next argues that his counsel's failure to "properly address" prior inconsistent statements of Sherry Brooks and Randi Brooks constitutes ineffective assistance. Pet. at 6. But he fails to show that his counsel's cross-examination of those witnesses fell below an objective standard of reasonableness.

Dkt. 53-3 at 78-81 (Ex. 18).

To show that counsel rendered ineffective assistance, petitioner must "identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment." *Strickland,* 466 U.S. at 690; *Matylinsky v. Budge,* 577 F.3d 1083, 1091 (9th Cir.), *cert. denied,* 130 S.Ct. 1154 (2009). The court then considers those acts against "prevailing professional norms," and counsel is presumed to have rendered adequate assistance. *Strickland,* 466 U.S. at 690; *Matylinsky,* 577 F.3d at 1092. Petitioner must show that counsel's alleged errors fall outside the range of competent legal assistance, and that it is reasonably probable that the result of the trial would have been different if counsel had not made the alleged errors. *Strickland,* 466 U.S. at 689.

REPORT AND RECOMMENDATION - 22

Petitioner argues in his PRP that the "defense strategy" was to show that Sherri Brooks "so disliked [petitioner], thought only a woman/mother should raise kids, that she made up these allegations and coached AB into giving false accusations so she, or Randi Brooks, would get custody." Petitioner argues his defense counsel either ignored this advice or made "a poor attempt at it" by not properly crossing Sherri Brooks[.]" Dkt. 53-2 at 33-34.

Petitioner identifies some alleged inconsistencies in Sherri Brooks' statements regarding when AB reported that petitioner had put his finger in her anus. Dkt. 53-2 at 13-15, 33-34. He notes that at the jury trial Sherri Brooks indicated AB reported the incident one month before she reported it to the police (which would have been at the end of March 2016) but that she testified at a prior hearing that the first time AB told her anything was April 20, 2016. *Id.* But in reviewing the record it appears that Sherri Brooks stated at the prior hearing that on April 20, 2016, AB asked her if Sherri Brooks remembered when she told her about her father putting his finger in her anus, indicating that this was something that AB had told Sherri about prior to April 20, 2016. Dkt. 53-3 at 336-338. Thus, the record does not reflect an inconsistency on this issue.

Petitioner also points to a Longview Police Department Report which indicates that Sherri Brooks reported that the incident with petitioner putting his finger in AB's anus had occurred 6 months prior to the report (meaning November 2015). Dkt. 53-2 at 13-15, 90. But the record shows that defense counsel did ask Sherri Brooks whether she told police the incident had occurred 6 months prior. Dkt. 53-4 at 456. And petitioner fails to show that this discrepancy undermines Sherri Brooks' testimony so significantly that any failure to cross-examine more thoroughly on this point was likely to change the

REPORT AND RECOMMENDATION - 23

outcome of the trial. Petitioner also cites to some other minor differences between Sherri Brooks's testimony and her statements at a prior hearing, but petitioner fails to show these minor inconsistencies are relevant or significant, or that there is a reasonable probability the result of the trial would have been different if defense counsel had raised them during cross-examination. Dkt. 53-2 at 13-15.

The record also shows that defense counsel asked questions aiming to show that Sherri Brooks and Randi Brooks were biased against petitioner. Defense counsel elicited from Sherri Brooks that she disapproved of the way petitioner was taking care of AB and her sister, he asked questions regarding whether Sherri Brooks had encouraged AB to talk about the abuse and offered her rewards to do so, and asked whether Sherri Brooks referred to the abuse case against petitioner as "her case." Dkt. 53-4 at 454-462.

Counsel also elicited testimony from Randi Brooks that her separation from petitioner was contentious, that petitioner took her children to another state after claiming to receive an email indicating that she was planning to leave with the kids, that she called the military police when petitioner left with the kids, and that petitioner thereafter mostly denied her contact with the kids. *Id.* at 626-628. Defense counsel also asked Randi Brooks about a medical examination/interview and if AB had denied anyone touching her private parts. *Id.* at 632-633. And defense counsel asked if Randi Brooks recalled AB's therapist asking her if she had told AB that her sister would be in danger if her father was found not guilty. *Id.*

Furthermore, as noted above, other significant evidence supported the verdict including the testimony of AB, counselor Each and the forensic interview of AB.

REPORT AND RECOMMENDATION - 24

Petitioner fails to show that there is a reasonable probability that a more "vigorous" cross-examination of Sherri Brooks and Randi Brooks would have altered the outcome of the trial.

Petitioner fails to show the Court of Appeals' rejection of this claim was contrary to or an unreasonable application of clearly established federal law or an unreasonable determination of the facts. Accordingly, this claim should be denied.

- Failing to Introduce Evidence Showing Perjury

Petitioner argues trial counsel was ineffective by failing to introduce key evidence proving primary state witnesses committed perjury including letters by Sherri Brooks sent to the state prosecutor, Facebook messages between Randi Brooks and Angel Alverez "showing they intended on doing anything, including u[s]ing petitioner's past against him", police reports showing Randi Brooks lying to state officials and medical professionals to achieve her goals. Dkt. 46 at 25.

In rejecting this claim, the Court of Appeals, in denying petitioner's PRP stated:

> Brooks also argues that his counsel provided ineffective assistance when he did not introduce as evidence in the child hearsay hearing and at trial (1) letters from Sherry Brooks demonstrating her bias and lack of veracity, (2) Facebook messages between Randi Brooks and Angel Alvarez demonstrating her bias and lack of veracity, (3) a police report purportedly showing Randi Brooks's perjury, and (4) the report of the victim's medical examination regarding lack of signs of sexual abuse. But as to the first three, he does not show how that evidence would have been admissible. And as to the latter, he does not show that the introduction of that report would probably have changed the result of his trial. So, again, he does not show ineffective assistance of counsel.

Dkt. 53-3 at 78-81 (Ex. 18).

In his PRP, petitioner alleges defense counsel provided ineffective assistance in failing to introduce evidence in the form of a letter Sherri Brooks wrote to the prosecutor sometime between December of 2016 and February of 2017 in which she makes

REPORT AND RECOMMENDATION - 25

several "wild and damaging claims" against petitioner, his brother, grandparents and father. Dkt. 53-2 at 24-25, 61-68 (Ex. 11). Petitioner argues this letter, which he alleges is one of three, shows extreme bias by Sherri Brooks against him. *Id.*

Under precedent of the U.S. Supreme Court, applying the Sixth and Fourteenth Amendments, the state courts reasonably rejected this claim. As the state court noted, petitioner fails to show that this evidence would have been admissible. *See Farrell v. Payne*, 108 F. App'x 503, 504 (9th Cir. 2004) (Rejecting ineffective assistance of counsel claim where "[petitioner] has not shown that such testimony would have been admissible under Washington law to support her theory of false confession."); *Villafuerte v. Stewart*, 111 F.3d 616, 630–31 (9th Cir. 1997) (Rejecting ineffective assistance of counsel claim where petitioner sought to introduce a note but failed to show who wrote the note or that it would have been admissible at trial.). The Court notes that the letter petitioner attaches is not signed, dated or sworn. Dkt. 53-2 at 61-68. Furthermore, petitioner fails to explain how this letter demonstrates Sherri Brooks committed "perjury" nor does petitioner identify which statements in the letter are false or present evidence demonstrating the statements are false. Furthermore, the letter discusses petitioner's prior criminal history, which defense counsel had good reason not to want to place at issue. Petitioner fails to show that, even if it were admissible, defense counsel's failure to introduce the letter as evidence constituted deficient performance or, that if the letter had been introduced, that it is reasonably probable the outcome of the trial would have been different.

In his PRP, petitioner alleges defense counsel provided ineffective assistance in failing to introduce evidence in the form of Facebook messages between Randi Brooks

REPORT AND RECOMMENDATION - 26

and Angel Alvarez which he claims would have shown Randi Brooks was lying during her testimony in stating that she did not have plans to get custody of petitioner's "girls" with Angel Alvarez. Dkt. 53-2 at 24-25, 76-87. He alleges the messages show Randi Brooks would "do whatever it takes to get custody including using petitioner's past juvenile record against [him]" and that she had service members ready willing to help her out and intimidate petitioner. *Id.*

The state court reasonably rejected this claim. As the state court noted, petitioner fails to show that this evidence would have been admissible. And petitioner also fails to explain how the Facebook messages demonstrate Randi Brooks committed "perjury" nor is the Court able to discern this based upon a review of the record. The messages also reference petitioner's prior criminal history and defense counsel had good reason not to want to open the door to discussion of that issue. Petitioner fails to show that, even if it were admissible, that defense counsel's failure to introduce the Facebook messages as evidence constituted deficient performance or, considering the significant other evidence supporting the finding of guilt, that if the messages had been introduced, there is a reasonable probability the outcome of the trial would have been different.

In his PRP, petitioner alleges defense counsel provided ineffective assistance in failing to introduce evidence in the form of a report from Longview Police Department, a report from Fort Hood Military Police ("M.P.") and various reports from CPS allegedly showing that Randi Brooks was willing to lie to authorities to get petitioner into trouble and for her to get custody. Dkt. 53-2 at 27-28, 90-102. Petitioner points to a Longview P.D. report and the medical examination report of AB in which Randi states her separation from petitioner was due to domestic violence and petitioner trying to rape her

REPORT AND RECOMMENDATION - 27

and that petitioner left for Washington State the next day. *Id.* at 90-102. Petitioner points to a military police report from March 15, 2015 (which he indicates was two weeks before he left) which reflects that military police were called due to a verbal altercation between petitioner and Randi Brooks, and which indicates Randi Brooks grabbed petitioner's arm to try to get her phone back which petitioner was keeping from her. *Id.* But, as the state court found, petitioner fails to show that these reports would have been admissible and, although petitioner appears to contend this March 15, 2015, incident was the same incident Randi Brooks was referring to in the reports, he presents no evidence that is the case. Finally, considering the significant other evidence supporting the finding of guilty in this case, petitioner fails to show that there is a reasonable probability that introduction of these reports would have altered the outcome of the trial.

Petitioner also points to Randi Brooks's statement in a CPS report that she "never thought petitioner would do this" and her statement at trial that petitioner had told her he had problems after AB was born and would need her to help with them. Dkt. 53-2 at 27-28. But these statements do not appear to the Court to be inconsistent and, to the extent they are, petitioner fails to show that they are significant or that, considering the significant evidence supporting the finding of guilt, there is a reasonable probability that introduction of these reports would have altered the outcome of the trial. The Court also notes that some of these reports, and in fact the specific statement petitioner argues should have been used, also refer to petitioner's prior criminal history which defense counsel had good reason not to want to place at issue.

REPORT AND RECOMMENDATION - 28

Petitioner fails to show the Court of Appeals' rejection of these claims was contrary to or an unreasonable application of clearly established federal law or an unreasonable determination of the facts. Accordingly, this claim should be denied.

- Failing to Introduce, Investigate or Address Custody Bias

Petitioner argues trial counsel was ineffective by failing to introduce, investigate, or address at trial, custody bias of Randi Brooks, John A. and Sherri Brooks. Dkt. 46 at 25.

In rejecting this claim, the Court of Appeals, in denying petitioner's PRP stated:

> Brooks argues that he received ineffective assistance because his counsel failed to properly address the efforts of Randi Brooks and Sherry Brooks to obtain custody of the victim. But he does not show that his counsel's investigation fell below an objective standard of reasonableness.

Dkt. 53-3 at 78-81 (Ex. 18).

Petitioner argues in his PRP, that the Facebook messages show that Randi Brooks was willing to do anything and have help from fellow soldiers to get custody of her children. Dkt. 53-2 at 29-30. Petitioner also indicates John Brooks Sr. and Sherri Brooks told CPS during a family meeting that they thought the girls should stay with them and that they were willing to hire an attorney if necessary. *Id.* But as discussed above, petitioner fails to show the Facebook messages were admissible and even if they were admissible, that defense counsel's failure to introduce the Facebook messages as evidence constituted deficient performance or, in light of the significant other evidence supporting the finding of guilt, that if the messages had been introduced, there is a reasonably probability the outcome of the trial would have been different.

And even if John Brooks Sr. and Sherri Brooks' told CPS that they thought the girls should stay with them, this was in the context of AB's allegations that petitioner had

REPORT AND RECOMMENDATION - 29

abused her and thus does not necessarily reflect bias or some kind of vendetta against petitioner as he represents. Petitioner fails to show that, considering the significant other evidence supporting the finding of guilt, even if this evidence had been introduced, there is a reasonably probability the outcome of the trial would have been different.

Furthermore, as previously discussed, defense counsel did ask questions intended to show that Sherri Brooks and Randi Brooks were biased against him or that they did not think petitioner should have custody of the children.

Petitioner fails to show the Court of Appeals' rejection of this claim was contrary to or an unreasonable application of clearly established federal law or an unreasonable determination of the facts. Accordingly, this claim should be denied.

- Failing to Provide a Meaningful Adversary Against the State

Petitioner argues trial counsel was ineffective by failing to provide a meaningful adversary against the state effectively denying petitioner representation. Dkt. 46 at 25.

> Brooks also argues that his counsel provided ineffective assistance by not providing a "meaningful and vigorous defense" by his not calling Brooks's grandmother, father, and Jordan Brooks as witnesses; by his failure to notify Brooks of the option of a bench trial; and by his failure to properly cross-examine Sherry Brooks. Pet. at 7. But he does not show that his counsel's performance fell below an objective standard of reasonableness, and he does not establish that neither of his counsel advised him of the option of a bench trial.

Dkt. 53-3 at 78-81 (Ex. 18).

In his PRP, petitioner contends that defense counsel provided ineffective assistance by failing to adequately interview or question his grandmother Beulah by failing to use her full knowledge of his relationship with Sherri Brooks, Randi Brooks and Brooks, Sr., her knowledge as to whether anyone lived with petitioner during the period in question and if she saw any signs of abuse and hid it. Dkt. 53-2 at 30-31. Petitioner attaches a letter from Beulah Brooks where she indicates she never saw signs that

REPORT AND RECOMMENDATION - 30

petitioner's children were being molested during the time period in question and that petitioner's half-brother Robert and his girlfriend lived with petitioner at some point during the period in question. *Id.* at 58-59. But the letter petitioner attaches to his PRP is not submitted in evidentiary form as an affidavit. Furthermore, Beulah Brooks was not living with petitioner during the period in question and thus her statement that she did not see signs that the girls were molested is of limited probative value. And she does not explain the basis for her purported knowledge that petitioner's half-brother Robert and his girlfriend lived with petitioner at some point during the period in question or when exactly they lived there. Petitioner fails to show that defense counsel provided ineffective assistance in failing to question Beulah Brooks on these issues much less that if he had questioned her on these issues there is a reasonable probability it would have changed the outcome of the trial.

In his PRP, petitioner also argues defense counsel provided ineffective assistance by failing to call Jordan Brooks to testify. *Id.* at 30-31. Petitioner contends Jordan Brooks could have testified to Sherri Brooks' bias against his family and that she was willing to lie, twist and manipulate people to get her way. *Id.* Petitioner attaches a statement from Jordan Brooks to his PRP which alleges Sherri Brooks has made statements accusing his family of being "perverts" and "having sex with little kids." Dkt. 53-2 at 54-55. But petitioner fails to show Jordan Brooks' testimony regarding his opinion of Sherri Brooks' character would have been admissible. *See* ER 404(a) ("Evidence of a person's character or a trait of character is not admissible for the purpose of proving action in conformity therewith on a particular occasion."). Furthermore, defense counsel could have had reasonable concerns that Jordan Brooks'

REPORT AND RECOMMENDATION - 31

statements regarding alleged past statements by Sherri Brooks' regarding a history of molestation could have opened the door to questions regarding petitioner's past criminal history. Finally, considering the significant evidence in the record supporting the finding of guilt, petitioner fails to show there is a reasonable probability that if Jordan Brooks had testified, it would have changed the outcome of the trial.

In his PRP, petitioner contends neither of his defense attorneys ever told him of the option of a bench trial. *Id.* at 30-31. But petitioner does not submit declarations from his defense attorneys supporting this claim and presents only his self-serving assertion that this is the case. Furthermore, petitioner does not have a federal constitutional right to a bench trial. See *Roe v. Coursey*, 469 F. App'x 622, 624 (9th Cir. 2012) ("Roe does not have a federal constitutional right to waive a jury trial and request a bench trial."); *Singer v. U.S.*, 380 U.S. 24, 85 S.Ct. 783, 13 L.Ed.2d 630 (1965) (recognizing that there is no federal constitutional right to waive a jury trial). And petitioner points to no Supreme Court precedent establishing that defense counsel's failure to advise him of the option of a bench trial under state law renders his performance deficient. See *Roe*, 469 F. App'x at 624 ("Roe, however, has not shown that counsel's failure to consult him regarding this state right [to waive a jury and request a bench trial] necessarily constitutes deficient performance under *Strickland.* Indeed, he has not pointed to any Supreme Court precedent establishing that the failure to advise a defendant of a state right, alone, renders counsel's performance deficient."). Accordingly, petitioner fails to establish defense counsel provided ineffective assistance on this basis.

Petitioner fails to show the Court of Appeals' rejection of these claims was contrary to or an unreasonable application of clearly established federal law or an

unreasonable determination of the facts. Accordingly, the Court should deny habeas corpus relief as to Ground 3.

III.  Grounds 1, 2, 4, 5: Exhaustion of State Court Remedies

Before seeking federal habeas corpus relief, a state prisoner must exhaust the remedies available in the state courts. The exhaustion requirement reflects a policy of federal-state comity, intended to afford the state courts "an initial opportunity to pass upon and correct alleged violations of its prisoners' federal rights." *Picard v. Connor*, 404 U.S. 270, 275 (1971) (internal quotation and citation marks omitted).

There are two avenues by which a petitioner may satisfy the exhaustion requirement. First, a petitioner may properly exhaust his state remedies by "fairly presenting" his claim in each appropriate state court, including the state supreme court with powers of discretionary review, thereby giving those courts the opportunity to act on his claim. *Baldwin v. Reese*, 541 U.S. 27, 29 (2004); *Duncan v. Henry*, 513 U.S. 364, 365-66 (1995).

Second, a petitioner may technically exhaust his state remedies by demonstrating that his "claims are now procedurally barred under [state] law." *Gray v. Netherland*, 518 U.S. 152, 162-63 (1996) (quoting *Castille v. Peoples*, 489 U.S. 436, 351 (1989)); *see also Smith v. Baldwin*, 510 F.3d 1127, 1139 (9th Cir. 2007) (en banc). If the petitioner is procedurally barred from presenting his federal claims to the appropriate state court at the time of filing his federal habeas petition, the claims are deemed to be procedurally defaulted for purposes of federal habeas review. *O'Sullivan v. Boerckel*, 526 U.S. 838, 848 (1999).

A habeas petitioner who has defaulted his federal claims in state court meets the technical requirements for exhaustion because "there are no state remedies any longer

'available' to him." *Coleman v. Thompson*, 501 U.S. 722, 732 (2007). Federal habeas review of procedurally defaulted claims is barred unless the petitioner can either demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice. *Id.* at 724. "An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State." 28 U.S.C. §2254(b)(2).

Respondent argues petitioner failed to properly exhaust Grounds 1, 2, 4, and 5, and that these claims are exhausted and procedurally barred. Dkt. 52. As discussed below, the Court should hold that petitioner failed to properly exhaust Grounds 1, 2, 4, and 5 and that those claims are technically exhausted and procedurally barred.

With respect to Grounds 1 and 2, petitioner did not make it clear in his briefs filed at each level in the state court system that he was claiming violations of the federal constitution. *See Galvan v. Alaska Dep't of Corrections*, 397 F.3d 1198, 1204 (9th Cir. 2005). The Court should find these claims are not subject to review on the merits, because they were presented to the Washington Courts only as questions of state law.

The Court should also hold that even if petitioner had properly exhausted Grounds 4 and 5, petitioner fails to show he is entitled to habeas relief on those claims. *See* 28 U.S.C. §2254(b)(2).

Respondent argues petitioner did not exhaust state remedies as to Grounds 1, 2, 4, and 5 because he failed to fairly present them as federal constitutional violations to the state appellate courts.

REPORT AND RECOMMENDATION - 34

To satisfy the "fair presentation" requirement for exhaustion purposes, "[i]t has to be clear from the petition filed at each level in the state court system that the petitioner is claiming the violation of the federal constitution that the petitioner subsequently claims in the federal habeas petition." *Galvan*, 397 F.3d at 1204. A petitioner must present the substance of his claim to the state courts. *See Picard*, 404 U.S. at 278.

The claim presented to the state courts must be the substantial equivalent of the claim presented to federal court. *See id.* The state courts have been given a sufficient opportunity to hear an issue when the petitioner has presented the state court with the issue's factual and legal basis. *Weaver v. Thompson*, 197 F.3d 359, 364 (9th Cir. 1999); *see also Kyzar v. Ryan*, 780 F.3d 940, 947 (9th Cir. 2015) ("In order to fairly present an issue to a state court, a [habeas] petitioner must present the substance of his claim to the state courts, including a reference to a federal constitutional guarantee and a statement of facts that entitle the petitioner to relief." (quotation marks and citation omitted)); *Scott v. Schriro*, 567 F.3d 573, 582–83 (9th Cir. 2009) (same).

Generally appealing to a broad constitutional provision alone is not sufficient to satisfy the exhaustion requirement. *See Gray v. Netherland*, 518 U.S. 52, 163 (1996) (internal citations omitted). Petitioner must either reference specific provisions of the federal constitution or statutes or cite to federal or state cases analyzing the federal constitutional issue. *See Castillo v. McFadden*, 399 F.3d 993, 999 (9th Cir. 2005); *Lyons v. Crawford*, 232 F.3d at 668, 670 (9th Cir. 2000), *as modified by* 247 F.3d 904 (9th Cir. 2001); *see Peterson v. Lampert*, 319 F.3d 1153, 1158 (9th Cir. 2003) ("for purposes of exhaustion, a citation to a state case analyzing a federal constitutional issue serves the same purpose as a citation to a federal case analyzing such an issue").

REPORT AND RECOMMENDATION - 35

"If the state case [cited to] discusses both state and federal issues relevant to the petitioner's claim, however, the citation to that case 'must be accompanied by some clear indication that the case involves federal issues.'" *James v. Hill*, 171 F. App'x 678, 679 (9th Cir. 2006) (internal citation omitted); *see Fields v. Waddington*, 401 F.3d 1018, 1022 (9th Cir. 2005) ("[w]hen a petitioner does not label his claim as federal, the mere citation to a state court case that engages in both a state and federal constitutional analysis does not suffice to exhaust the federal claim."); *Casey v. Moore*, 386 F.3d 896, 912 n. 13 (9th Cir. 2004) ("For a federal issue to be presented by the citation of a state decision dealing with both state and federal issues relevant to the claim, the citation must be accompanied by some clear indication that the case involves federal issues."). "Raising a state claim that is merely similar to a federal claim does not exhaust state remedies." *Fields*, 401 F.3d at 1022.

"Federal habeas corpus relief does not lie for errors of state law." *Estelle v. McGuire*, 502 U.S. 62 67 (1991). With respect to Grounds 1 and 2, petitioner did not make it clear in his briefs filed at each level in the state court system that he was claiming violations of the federal constitution. *See Galvan*, 397 F.3d at 1204.

With respect to Ground 1, on direct appeal, petitioner did not raise the issue of the trial court's *ex parte* communication with the jury regarding the difference between Count I and Count II at all, much less as a federal claim. As to Ground 2, on direct appeal, petitioner raised in his SAG to the Court of Appeals the issue of denial of his right to counsel, based on his first defense counsel withdrawing (allegedly forcing the waiver of his speedy trial rights), yet he did not fairly present it as a federal claim. Petitioner did not identify his claim as a federal claim, cite to any federal case law, or

REPORT AND RECOMMENDATION - 36

cite to state case law analyzing a federal issue. Petitioner also did not present this issue as a federal claim when he sought review to the Washington Supreme Court on direct appeal.

In his PRP to the Court of Appeals, petitioner raised the issues of the trial court's *ex parte* communication with the jury regarding the difference between Count I and Count II and denial of his right to counsel when his first defense counsel withdrew forcing waiver of his speedy trial rights; yet petitioner did not fairly present the claims as federal claims by identifying them as such, citing to any federal case law, or citing to state case law exclusively analyzing a federal issue.

With respect to the denial of counsel issue, petitioner stated in his PRP:

> I was denied my constitutional right of representation when my first lawyer, Mr. Dekantz quit being my public defender on March 30th 2017, 10 days before the scheduled *Ryan* Hearing and 17 days before my trial. On this day I was not represented by any Attorney. The Honorable Judge Warning asked if I would sign a waiver of speedy trial, I declined as I didn't want the state, Sherry Brooks and Randi Brooks to have even more time to coach A.B.'s testimony. Judge Warning told me I had to sign it or proceed to trial either with no lawyer or with a lawyer not prepared to represent me.

Dkt. 53-2 at 40 (Ex. 11). And with respect to the *ex parte* communication issue, petitioner alleged "[t]he Honorable Judge Evans also violated my constitutional rights, by not allowing me to appear in person to defend myself, by responding to a jury question without consulting myself, my defense council, or the state." *Id.* at 41 (Ex. 11). Petitioner also argued that "it is settled in this state that there should be no communication between the court and the jury in the absence of the defendant", citing to "*State v. Caligan*[7], 99 Wn.2d 501." *Id.*

---

[7] Petitioner appears to be referring to *State v. Caliguri*, 99 Wash.2d 501, 664 P.2d 466 (1983).

REPORT AND RECOMMENDATION - 37

Although petitioner makes general references to "constitutional violations" and the "right to representation" with respect to these claims in his PRP, such general references are insufficient to fairly present his claims as federal constitutional violations. *See Hiivala v. Wood,* 195 F.3d 1098, 1106 (9th Cir. 1999) (holding that "general appeals to broad constitutional principles, such as due process, equal protection, and the right to a fair trial, are insufficient to establish exhaustion").[8] In support of his claim regarding *ex parte* communication, petitioner cites to *State v. Caliguri,* a state court case that analyzes the issue of *ex parte* communications between the court and the jury as a matter of state law. Dkt. 53-3 at 41 (Ex. 11); *Caliguri,* 99 Wash.2d at 508 (stating "it is settled in this state that there should be no communication between the court and the jury in the absence of the defendant[.]" (citing *State v. Shutzler*, 82 Wash. 365, 367, 144 P. 284, 285 (1914) (finding "[i]t is a constitutional right of the accused in a criminal prosecution to appear and defend in person and by counsel" and citing to Article 1, § 22 of the Washington State Constitution which states that "[i]n criminal prosecutions the accused shall have the right to appear and defend in person, or by counsel …"))).

The Court of Appeals also did not frame or directly address these issues as federal claims in their decisions denying petitioner's PRP. With respect to the *ex parte* communication issue, the Court of Appeals stated:

> [With respect to the claim regarding the trial court committing misconduct by] answering a jury question without him being present in court … In response to the jury's first question the trial court merely told the jury to refer to the jury instructions. When a court's answer to a jury question is negative in nature and conveys no affirmative information, a violation of the right to be present is harmless beyond a reasonable doubt. *State v. Besabe*, 166 Wn. App. 872, 882-83, 271 P.3d 387 (2012); *State v. Allen*, 50 Wn. App. 412, 419, 749 P.2d 702 (1988).

---

[8] The Court notes that the majority of the state law cases cited by petitioner in his petition for review themselves cite only to state law cases and do not cite to the U.S. Constitution.

REPORT AND RECOMMENDATION - 38

Dkt. 53-3 at 78-81 (Ex. 18). Thus, the Court did not frame this issue as a federal claim and it analyzed the issue under state court precedent.[9] And, with respect to the withdrawal of counsel issue, the Court of Appeals stated:

> [With respect to the claim regarding the trial court committing misconduct by] denying him counsel during a speedy trial hearing following his first attorney's withdrawal …Brooks does not show that the court committed misconduct by conducting a speedy trial hearing after his first counsel had withdrawn and before his second counsel had been appointed.

Dkt. 53-3 at 78-81. Thus, the Court also did not frame this issue as a federal claim or analyze it under federal law.

Thus, petitioner did not fully or fairly present these claims as federal claims to the Court of Appeals in his PRP.

In his motion for discretionary review to the Washington Supreme Court, petitioner likewise did not present these claims regarding the court's *ex parte* communication with the jury and the denial of counsel as federal claims. Petitioner did not identify his claims as federal, cite to any federal case law in support of the claims, nor does he cite to state case law exclusively analyzing a federal issue. Moreover, the Washington Supreme Court did not address these claims as federal claims in its opinion. Rather, the Washington Supreme Court stated:

> To obtain this court's review, Mr. Brooks must show that the Court of Appeals decision conflicts with a decision of this court or with a published decision of the Court of Appeals, or that he is raising a significant constitutional question or an issue of substantial public interest. RAP 13.4(b); RAP 13.5A(a)(1), (b). Mr. Brooks continues to press his claims of ineffective assistance of counsel and also contends that he was deprived of his right to counsel at a speedy trial hearing after his appointed counsel withdrew and was denied his right to be present when the trial court answered jury inquiries during deliberations. But he does not cite any of the criteria for review, nor does he address at all the Court of Appeals

---

[9] Both *State v. Benabe* and *State v. Allen* cite to only state law cases in analyzing this issue and do not analyze the issue directly, and certainly not exclusively, under federal law. *See Besabe*, 166 Wn. App. at 882-83; *Allen*, 50 Wn. App. at 419.

decision showing that it conflicts with any other decision or explain why his issues are of such constitutional significance or public interest as to call for this court's review.

Dkt. 53-3 at 170-171 (Ex. 20).[10]

In Ground 4, petitioner argues the state failed to provide petitioner with an opportunity for full and fair litigation of his claims in his state personal restraint petition by not granting an evidentiary hearing on the allegations made in affidavits submitted to the courts, and by giving deference to trial counsel's presumed "strategic" choices over contrary witness statements in the affidavits. But the record reflects that petitioner did not clearly present this issue to the state appellate courts at each level of review as a separate claim, much less as a federal claim.

In Ground 5, petitioner argues the state court improperly denied his CrR 7.8 motion, incorrectly finding that the issue that trail counsel was ineffective for failing to call his father, John A. Brooks ("Brooks Sr."), as a witness based on evidence Brooks Sr. was threatened by family members that he would lose contact with his grandchildren if he testified for petitioner at trial, had already been raised in a previous PRP. He further argues petitioner's attorney on his CrR 7.8 motion did not properly argue this issue nor did she properly file a notice of intent to file a Direct Appeal even though petitioner told her he required this to move forward with his federal habeas corpus case.

Petitioner appears to be referring to the motion for a new trial under CrR 7.8(b) filed in Cowlitz County Superior Court on May 22, 2023, and which was denied on June

---

[10] The Court notes that even if petitioner had presented these claims as federal claims to the Washington Supreme Court in his motion for discretionary review, he did not present them as federal claim in his PRP to the Court of Appeals. Thus, presenting them to the Washington Supreme Court for the first time in a motion for discretionary review, where the Washington Supreme Court did not address them, would be insufficient to satisfy the exhaustion requirement.

REPORT AND RECOMMENDATION - 40

2, 2023. Dkt. 46 at 29-31. In denying the motion, the Superior Court found that petitioner was procedurally barred from raising the issue because he had litigated the same claim in his prior personal restraint petition, which the Court of Appeals denied. *Id.* at 30-31. The court further determined that the proffered testimony from Brooks Sr., submitted in support of the motion -- that Sherri Brooks threatened Brooks Sr. that he would not see his grandchildren if petitioner was not convicted -- was not newly discovered evidence, as it was known to defense counsel during trial, and that defense counsel's decision not to call Brooks Sr. as a witness was a legitimate trial decision, and the proffered testimony would probably not change the result of the trial and would only serve to impeach another witness who testified. *Id.* at 30.

On April 4, 2024, Brooks filed a notice of appeal of the Superior Court's denial of his CrR 7.8 motion, along with a motion to enlarge time to appeal, claiming his lawyer never advised him of the June 2, 2023, order. *Id.* at 35. On May 6, 2024, Commissioner Bearse of the Court of Appeals dismissed petitioner's appeal as untimely, finding that no gross miscarriage of justice would result from denying the motion because petitioner had already pursued the same issues through direct appeal and a personal restraint petition. *Id.* at 35-36. The Court of Appeals issued a mandate on June 7, 2024, certifying that the ruling became final on June 6, 2024. *Id.* at 37.

The record shows that petitioner did not present his claims in Ground 5 -- that (a) the state court improperly denied his CrR 7.8 motion because it incorrectly found that the issue that his father, John A. Brooks, was threatened by family members that he would lose contact with his grandchildren if he testified for petitioner at trial had already been raised in a previous PRP and (b) that his attorney on his CrR 7.8 motion failed to

REPORT AND RECOMMENDATION - 41

properly argue this issue or file a notice of intent to file a Direct Appeal -- as federal constitutional claims to the to the state appellate courts at each level of review.

Accordingly, the Court should hold that petitioner failed to fairly present Grounds 1, 2, 4, and 5 as federal constitutional claims to the state appellate courts at each level of review.

A.    Technical Exhaustion

As discussed above, petitioner did not properly exhaust Grounds 1, 2, 4, and 5. If petitioner attempted to raise them in a second personal restraint petition, the state courts would find them barred by Washington law. Under Revised Code of Washington ("RCW") 10.73.090(1), a petition for collateral attack on a judgment and sentence in a criminal case must be filed within one year after the judgment becomes final, subject to exceptions that do not apply here. *See* RCW 10.73.100. A judgment becomes final for purposes of state collateral review on the date that the appellate court issues its mandate disposing of a timely direct appeal. RCW 10.73.090(3)(b).

Here, the state court issued its mandate on December 10, 2019. Dkt. 53-2 at 206 (Ex. 10). Petitioner would now be time barred from returning to the state courts to present his unexhausted claims. *See* RCW 10.73.090. Because petitioner has already filed a personal restraint petition that was decided by the state courts, the state courts are unlikely to entertain another such petition. *See* RCW 10.73.140 (successive petition bar).

Accordingly, the Court should find that petitioner has technically exhausted, and procedurally defaulted, Grounds 1, 2,  4, and 5.

REPORT AND RECOMMENDATION - 42

B.    Cause and Prejudice

The Federal District Court may not review a habeas corpus claim that has been procedurally defaulted unless petitioner can demonstrate cause and prejudice, or a fundamental miscarriage of justice. *Coleman*, 501 U.S. at 750. To satisfy the "cause" prong of the cause and prejudice standard, petitioner must show that some objective factor external to the defense prevented him from complying with the state's procedural rule. *Id.*, at 753; *Murray v. Carrier*, 477 U.S. 478, 488 (1986) (a petitioner can demonstrate "cause" if he shows constitutionally ineffective assistance of counsel, the unavailability of a factual or legal basis for a claim, or some interference by officials). To show "prejudice," petitioner "must shoulder the burden of showing, not merely that the errors at his trial created a *possibility* of prejudice, but that they worked to his *actual* and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." *United States v. Frady*, 456 U.S. 152, 170 (1982) (emphases in original). And only in a "truly extraordinary case," the Court may grant habeas relief without a showing of cause or prejudice to correct a "fundamental miscarriage of justice" where a constitutional violation has resulted in the conviction of a defendant who is actually innocent. *Schlup v. Delo*, 513 U.S. 298, 338 (1995).

Petitioner fails to demonstrate that any factor external to the defense prevented him from complying with the state's procedural rules and, thus, he has not demonstrated cause for his procedural default. Because petitioner has not met his burden of demonstrating cause for his procedural default, the Court need not determine whether there was any actual prejudice. *See Cavanaugh v. Kincheloe*, 877 F.2d 1443, 1448 (9th Cir. 1989) (citing *Smith v. Murray*, 477 U.S. 527, 533 (1986)). In addition, petitioner makes no colorable showing of actual innocence.  Petitioner thus fails to

REPORT AND RECOMMENDATION - 43

demonstrate that his procedurally defaulted claims are eligible for federal habeas review. Therefore, Grounds 1, 2, 4, and 5 should be dismissed.

IV.  Grounds 4 and 5 – Merits Review (If the Court Decides These Claims Have Been Properly Exhausted and Are Not Procedurally Barred)

In Ground 4, petitioner argues the state failed to provide petitioner with an opportunity for full and fair litigation of his claims in his state personal restraint petition by not granting an evidentiary hearing on the allegations made in affidavits submitted to the courts, and by giving deference to trial counsel's presumed "strategic" choices over contrary witness statements in the affidavits. Dkt. 46 at 10.

In Ground 5, petitioner argues (a) the state improperly denied petitioner's CrR 7.8 motion, incorrectly finding that the issue that his father, John A. Brooks, was threatened by family members that he would lose contact with his grandchildren if he testified for petitioner at trial had already been raised in a previous PRP, and (b) petitioner's attorney on his CrR 7.8 motion did not properly argue this issue nor did she properly file a notice of intent to file a Direct Appeal even though petitioner told her he required this to move forward with his federal habeas corpus case. *Id.* at 26.

As discussed above, Grounds 4 and 5 should be dismissed as unexhausted and procedurally defaulted. However, even if the Court considers Grounds 4 and 5, these claims fail.

"Federal habeas corpus relief does not lie for errors of state law." *Estelle v. McGuire*, 502 U.S. 62 67 (1991). Thus, generally, errors in state post-conviction review are "not addressable through habeas corpus proceedings." *Franzen v. Brinkman*, 877 F.2d 26 (9th Cir. 1989) (holding alleged due process violation based on appellate court delay in deciding petition for post-conviction relief was attack on state court process, not

REPORT AND RECOMMENDATION - 44

challenge to detention and sentence, and was therefore not cognizable in § 2254 habeas action); *Silversky v. Frink*, 500 F.App'x 625, 626 (9th Cir. 2012) ("A federal habeas petition is not the proper vehicle for addressing the adequacy of process provided [to petitioner] in state post-conviction proceedings.").

Petitioner does not identify any clearly established federal law that the Cowlitz County Superior Court or the Court of Appeals violated in deciding his motion for a new trial and PRP that could support a separate habeas claim. Petitioner's disagreement with the state court's procedures on post-conviction review does not establish a separate constitutional violation cognizable on habeas review.

Furthermore, even if petitioner's claim that the state improperly denied his CrR 7.8 motion were cognizable, the record supports the state court's finding that the issue raised in the motion, that his father, John A. Brooks, was threatened by family members that he would lose contact with his grandchildren if he testified for petitioner at trial had already been raised in a previous PRP. Thus, petitioner fails to show the state court's decision was contrary to or an unreasonable application of clearly established federal law or an unreasonable determination of the facts.

Furthermore, "[t]he ineffectiveness or incompetence of counsel during Federal or State collateral post-conviction proceedings shall not be a ground for relief in a proceeding arising under section 2254." 28 U.S.C. § 2254(i); *see also Coleman v. Thompson*, 501 U.S. 722, 752 (1991) ("There is no constitutional right to an attorney in state post-conviction proceedings.... Consequently, a petitioner cannot claim constitutionally ineffective assistance of counsel in such proceedings."); *Pennsylvania v. Finley*, 481 U.S. 551, 555, 107 S. Ct. 1990, 1993, 95 L. Ed. 2d 539 (1987) ("the right to

REPORT AND RECOMMENDATION - 45

appointed counsel extends to the first appeal of right, and no further. Thus, we have rejected suggestions that we establish a right to counsel on discretionary appeals. …We think that since a defendant has no federal constitutional right to counsel when pursuing a discretionary appeal on direct review of his conviction, *a fortiori,* he has no such right when attacking a conviction that has long since become final upon exhaustion of the appellate process."). *Doughton v. Montgomery*, No. 2:20-cv-01774, 2021 WL 3186567, at *2 (E.D. Cal. Jul. 28, 2021) ("While it is theoretically possible to receive ineffective assistance of counsel, even on state law issues, and hence state a viable federal claim, such a claim is unavailable for state court collateral proceedings."); *State v. Winston*, 105 Wash. App. 318, 325, 19 P.3d 495, 499 (2001) (Finding no constitutional right to counsel on a CrR 7.8 motion, stating "[t]he preliminary question, under *Pennsylvania v. Finley,* is whether the hearing addresses an application for postconviction relief other than the first direct appeal of right. If it does, there is no constitutional right to counsel.").

Thus, to the extent petitioner claims his attorney was ineffective in failing to timely appeal or notify him of his right to appeal from the denial of his post-conviction CrR 7.8(b) motion for a new trial, such claim is also not cognizable on federal habeas review.

EVIDENTIARY HEARING

In a proceeding instituted by the filing of a federal habeas corpus petition by a person in custody pursuant to a judgment of a state court, the "determination of a factual issue" made by that court "shall be presumed to be correct." 28 U.S.C. § 2254(e)(1). The petitioner has "the burden of rebutting the presumption of correctness by clear and convincing evidence." *Id.* Where he or she "has diligently sought to develop

the factual basis of a claim for habeas relief, but has been denied the opportunity to do so by the state court," an evidentiary hearing is not precluded. *Baja v. Ducharme*, 187 F.3d 1075, 1078-79 (9th Cir. 1999) (quoting *Cardwell v. Greene*, 152 F.3d 331, 337 (4th Cir. 1998)).

If, however, the petitioner fails to develop "the factual basis of a claim" in the state court proceedings, an evidentiary hearing on that claim will not be held, unless the petitioner shows:

(A) the claim relies on--

(i) a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable; or

(ii) a factual predicate that could not have been previously discovered through the exercise of due diligence; and

(B) the facts underlying the claim would be sufficient to establish by clear and convincing evidence that but for constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense

28 U.S.C. § 2254(e)(2). The phrase "failed to develop" contained in 28 U.S.C. § 2254(e)(2) "implies some lack of diligence" on the petitioner's part. *Williams v. Taylor*, 529 U.S. 420, 430-31 (2000). Thus, "a failure to develop the factual basis of a claim is not established unless there is lack of diligence, or some greater fault, attributable to the [petitioner] or the [petitioner's] counsel." *Id.* at 432. Accordingly, "[i]f there has been no lack of diligence at the relevant stages in the state proceedings, the [petitioner] has not 'failed to develop' the facts under § 2254(e)(2)," and he or she "will be excused from showing compliance with the balance of [that] subsection's requirements." *Id.* at 437.

REPORT AND RECOMMENDATION - 47

"[A]n evidentiary hearing . . . is required where the petitioner's allegations, if true, would entitle him to relief, and the petitioner has satisfied the requirements [the Supreme Court set forth in] *Townsend v. Sain*, 372 U.S. 293 (1963)." *Stanley v. Schriro*, 598 F.3d 612, 624 (9th Cir. 2010). Under those requirements, the "district court *must* hold an evidentiary hearing . . . when the facts are in dispute if (1) the petitioner 'alleges facts which, if proved, would entitle him to relief,' and (2) the state court has not 'after a full hearing reliably found the relevant facts.'" *Williams v. Schriro*, 423 F.Supp.2d 994, 1006 (D. Ariz. 2006) (quoting *Townsend*, 372 U.S. at 312-13) (emphasis in original); *see also Stanley*, 598 F.3d at 624.

"In any other case in which the facts are in dispute and diligence has been established, the district court . . . 'has the power, constrained only by [its] sound discretion, to receive evidence bearing upon" the petitioner's claim. *Williams*, 423 F.Supp.2d at 1006 (quoting *Townsend*, 372 F.3d at 318).

An evidentiary hearing, therefore, "is required when the petitioner's allegations, if proven, would establish the right to relief," but it "is *not* required on issues that can be resolved by reference to the state court record." *Totten v. Merkle*, 137 F.3d 1172, 1176 (9th Cir. 1998) (emphasis in the original). "[W]hen issues can be resolved with reference to the state court record, an evidentiary hearing becomes nothing more than a futile exercise." *Totten*¸ 137 F.3d at 1176; *United States v. Birtle*, 792 F.2d 846, 849 (9th Cir. 1986) (an evidentiary hearing is not required if the motion, files and records of the case conclusively show petitioner is entitled to no relief).

In determining whether relief is available under 28 U.S.C. § 2254(d)(1) or (d)(2) the Court's review is limited to the record before the state court. *Cullen v. Pinholster*,

REPORT AND RECOMMENDATION - 48

563 U.S. 170 (2011); *Gulbrandson v. Ryan*, 738 F.3d 976, 993, n. 6 (9th Cir. 2013) ("*Pinholster* and the statutory text make clear that [the] evidentiary limitation [to the record before the state courts] is applicable to 2254(d)(2) claims as well."). A hearing is not required if the allegations would not entitle petitioner to relief under §2254(d). *Schriro v. Landrigan*, 550 U.S. 465, 474 (2007). "It follows that if the record refutes the applicant's factual allegations or otherwise precludes habeas relief, a district court is not required to hold an evidentiary hearing." *Id.*; *see Cullen*, 563 U.S. 170.

Because, as discussed above, the grounds petitioner raises may be resolved based solely on the existing state court record, and he has failed to prove his allegation of constitutional errors, no evidentiary hearing is required.

CERTIFICATE OF APPEALABILITY

If the Court adopts the undersigned's Report and Recommendation, it must determine whether a COA should issue. Rule 11(a), Rules Governing Section 2254 Cases in the United States District Courts ("The district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant."). A COA may be issued only where a petitioner has made "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2)-(3). A petitioner satisfies this standard "by demonstrating that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003).

The undersigned recommends that petitioner not be issued a COA. No jurist of reason could disagree with the above evaluation of his constitutional claims or conclude that the issues presented deserve encouragement to proceed further. Petitioner should

REPORT AND RECOMMENDATION - 49

address whether a COA should issue in his written objections, if any, to this Report and Recommendation.

CONCLUSION

Based on the foregoing discussion, the undersigned recommends that the Court dismiss the petition for writ of *habeas corpus* with prejudice. A certificate of appealability should also be denied. A proposed order and proposed judgment are attached.

Pursuant to 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b), the parties shall have fourteen (14) days from service of this report to file written objections. *See also* Fed. R. Civ. P. 6. Failure to file objections will result in a waiver of those objections for purposes of *de novo* review by the district judge, *see* 28 U.S.C. § 636(b)(1)(C), and can result in a waiver of those objections for purposes of appeal. *See Thomas v. Arn*, 474 U.S. 140, 142 (1985); *Miranda v. Anchondo*, 684 F.3d 844, 848 (9th Cir. 2012) (citations omitted). Accommodating the time limit imposed by Fed. R. Civ. P. 72(b), the Clerk is directed to set the matter for consideration on **February 6, 2026**, as noted in the caption.

Dated this 22nd day of January, 2026.

Theresa L. Fricke
United States Magistrate Judge

REPORT AND RECOMMENDATION - 50